# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MONIQUE SALES,** | } |
| **Plaintiff,** | } |
| v. | }  Case No.: 2:10-CV-03302-RDP |
| **FIVE POINTS TEMPORARIES, L.L.C.,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This case is before the court on (1) Defendant Five Points Temporaries, LLC d/b/a Five Points Staffing's Motion for Summary Judgment (Doc. # 28); (2) the Magistrate Judge's Report and Recommendation thereon (Doc. # 48); (3) Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (Doc. # 50); and (4) Five Points Temporaries, LLC d/b/a/ Five Points Staffing's Motion to Strike Plaintiff's Objections To Report and Recommendation (Doc. # 51).

Plaintiff has objected to the Report and Recommendation arguing that it resolved disputed issues of material facts in favor of the Defendant, rather than Plaintiff, the non-moving party. (Doc. # 50 at 21). Plaintiff further objected to the Report and Recommendation arguing that it improperly applied the law. (Doc. # 50 at 21). Plaintiff's objections to the Report and Recommendation are only pursued as to her claims under 42 U.S.C. §1981. (Doc. # 50 at 21, n.18). After carefully reviewing the record, the court sustains Plaintiff's objections. The Rule 56 record contains sufficient evidence to create an genuine issue of material fact as to whether the reasons stated by Defendant for Plaintiff's termination were a pretext for race discrimination and/or race-based retaliation.

Five Points is a staffing company that supplies temporary workers to businesses. David McNeil is the owner and "had the ultimate responsibility to fire any staff permanent employees." (Doc. # 33-1 at 14). Traci McNeil, David McNeil's wife, is an employee of Five Points. Mrs. McNeil is part of "management" at Five Points and had supervisory authority over Plaintiff. (Doc. # 35-1 at 25-26).

Five Points has clients who have expressed preferences for temporary employees of a certain race. (Doc. # 35-1 at 77). There is testimony in the record that Mrs. McNeil and other managers directed that temporary assignments be made based on the race of the temporary employee and the racial preferences of the Five Points client. (Doc. # 39-8 at 12, 18). In November and December of 2008, Plaintiff complained to Mari Ann Aultman, the Vice-President of operations at Five Points and the "branch manager" for the Birmingham office where Plaintiff worked, that she was being asked by Kristi Janoulis, the office manager, to place temporary workers based on race. (Doc. # 34-1 at 115). Janoulis communicated to Aultman that Plaintiff was upset by the directive to staff based on race, and that Plaintiff did not want to fill orders to send only white candidates to a client. (Doc. # 48 at 11). Both Mr. And Mrs. McNeil were aware that Plaintiff was unhappy about being directed to staff clients based on a client's racial preference. (Doc. # 48 at 11).

In a meeting between Mrs. McNeil, Janoulis, and another employee, Amy Cochran, to discuss Plaintiff's objections to the directive to staff based on race, Mrs. McNeil referred to Plaintiff as a "sue happy nigger." (Doc. # 39-8 at 19-20).

In February 2009, Mr. McNeil met with Plaintiff about her employment at Five Points. During this meeting, Plaintiff complained that she was being treated "different," and that she did not like how Mrs. McNeil downgraded and belittled Plaintiff's "own kind." (Doc. # 34-1 at 93, 105).

Mr. McNeil understood Plaintiff to be referring to African-Americans when she referenced her "kind." (Doc. # 34-1 at 105). Mr. McNeil praised Plaintiff's job performance during this meeting. (Doc. # 34-1 at 105).

On March 5, 2009, Beth Lopes, another Five Points employee, received a call from the YMCA. Lopes, a new employee, asked the plaintiff, "Do we have the YMCA?" (Doc. # 34-1 at 78). Plaintiff "informed her that if a temporary called and asked for a certain position to inform them that we do not have the YMCA." (Doc. # 34-1 at 78). Plaintiff testified that Lopes "led [her] to believe that it was a temp call. She never said that [she] spoke with a client." (Doc. # 34-1 at 78). Mrs. McNeil counseled both Plaintiff and Lopes for failing to ensure that the YMCA was not a customer before responding to the call. Lopes admitted at the time that the incident was her fault. (Doc. # 33-1 at 35).

Later on March 5, 2009, Mr. McNeil met with Plaintiff and discussed several instances of Plaintiff's alleged poor job performance. Mr. McNeil addressed the YMCA incident, as well as other more temporally distant incidents. (Doc. # 31-1 at 22). At this meeting, Plaintiff stated that "when you downgrade me, I can't give it my all. When you downgrade my people, my own kind." (Doc. # 31-1 at 22). Mr. McNeil terminated Plaintiff during this meeting for poor job performance. Five Points replaced Plaintiff with a white employee. (Doc. # 48 at 12).

Mr. McNeil met with Lopes after he terminated Plaintiff. Mr. McNeil told her that she handled the YMCA situation improperly and gave her instructions on how to handle similar situations in the future. In his notes of this meeting, Mr. McNeil noted "that the YMCA issue was not the reason that [Plaintiff] was terminated." (Doc. # 33-1 at 123). In his deposition, however, Mr. McNeil testified that he actually told Lopes that the YMCA issue was not the "sole" reason Plaintiff

3

was terminated. (Doc. # 33-1 39). Mr. McNeil made these notes "because we live in a very litigious society. And I like to have some sort of backup." (Doc. # 33-1 at 39).

There was also evidence presented in the record that Mrs. McNeil made fun of black employees who mispronounced words. (Doc. # 34-1 at 96). There was also evidence that Aultman called African-American employees, including Plaintiff, "the 'n' word," and referred to another employee as a "stupid nigger." (Doc. # 39-8 at 9-10). Aultman was also heard to say "sue happy nigger." (Doc. # 39-8 at 10).

Evidence presented also indicated that David McNeil used "the 'n' word" at least fifteen (15) times. (Doc. # 39-8 at 14). Mrs. McNeil called individuals who are black, including Plaintiff, "the 'n' word." She had been heard to refer to African Americans as "worthless piece of shit nigger," and "sue happy nigger." (Doc. # 39-8 at 15). Cochran testified that she had heard Mrs. McNeil state that she regretted hiring Plaintiff "because she was a nigger." (Doc. # 39-8 at 15). In discussing the hiring of a new recruiter who was black, Mrs. McNeil said to Cochran that Five Points "had enough niggers in her office." (Doc. # 39-8 at 15-16).

In his Report and Recommendation, the Magistrate essentially disregarded the evidence regarding these racial comments by management on the issue of pretext because they were either not made by the decision maker nor made in reference to the decision at issue. (Doc. # 48 at 20-21)[1].

Where an employer "articulates one or more [legitimate, non-discriminatory] reasons [for the employment decision at issue], the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to

---

[1] Although Plaintiff argues that the Eleventh Circuit's recognition (in cases such as *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1332 (11th Cir. 1999)) of the cat's paw theory counsels against summary judgment here, the court need not go that far and leaves that issue for the pre-trial conference in this case.

conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]." *Alexander*, 207 F.3d at 1341; *see also Combs*, 106 F.3d at 1541-43.

A plaintiff may establish pretext in at least two ways: by showing that (1) "a discriminatory reason more likely motivated" her termination or (2) "the employer's proffered reason is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Pretext can be shown if Plaintiff can present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

After careful review, the court concludes Plaintiff has presented evidence that she complained about and/or expressed her opposition to certain racially motivated temporary assignments in November and December 2008.  In February 2009, Plaintiff met with Mr. McNeil

to discuss her employment. During this meeting, Plaintiff complained that she was treated differently and did not like how Mrs. McNeil downgraded and belittled her "kind". During this meeting, Mr. McNeil praised Plaintiff's performance. Thereafter, within a month, and after what a reasonable trier of fact could conclude was a single, minor incident for which another employee took responsibility, Mr. McNeil met with Plaintiff and terminated her employment for poor job performance. The timing of this sequence of events, particularly when combined with the evidence of a general discriminatory animus toward African Americans by Defendant's management and questions about the veracity of Defendant's proffered reasons for discharging her is sufficient for a reasonable fact finder to conclude that Plaintiff's race or her complaints of race discrimination were a motivating factor in the decision to terminate her employment. Thus, there are genuine issues of fact with regard to whether the articulated reasons for the termination of Plaintiff's employment were a pretext for race discrimination or retaliation, and whether she was terminated because of her race and/or protected activity.

Accordingly, the court finds that Plaintiff's objections should be sustained. A separate order will be entered.

**DONE** and **ORDERED** this      19th      day of June, 2013.

                                                                          _____
                                                                          **R. DAVID PROCTOR**
                                                                          UNITED STATES DISTRICT JUDGE